# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JESUS O. NAVARRO**
**United States Army, Appellant**

ARMY 20250171

Headquarters, First Cavalry Division
Javier E. Rivera-Rosario, Military Judge
Lieutenant Colonel Shaun B. Lister, Special Trial Counsel

For Appellant: Major Peter M. Ellis, JA; Captain Emily R. Ittner, JA (on brief).

For Appellee: Captain Nicholas A. Schaffer, JA (on brief).

30 March 2026

-------------------------------------------------------------------
SUMMARY DISPOSITION UPON RECONSIDERATION
-------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of one specification of wrongfully possessing child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [UCMJ]. Pursuant to the plea agreement requiring a fixed sentence, the military judge sentenced appellant to a bad-conduct discharge, with no other punishment.

Appellant submitted this case with no specific assignments of error, but personally submitted fourteen separate issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).[1] One of these *Grostefon* matters alleges that appellant received ineffective assistance of counsel from his detailed trial defense counsel.

---

[1] We have given full and fair consideration to these other matters and determine they merit neither discussion nor relief.

Appellant alleged six specific instances of deficient conduct. In fulfillment of our duty to give full and fair consideration to matters personally submitted pursuant to *Grostefon*, we determined that two of his allegations were conclusively resolved based on the record alone. *See United States v. Ginn*, 47 M.J. 236, 244 (C.A.A.F. 1997). However, four of his allegations could not be adequately resolved by the record and were asserted with such specificity that we found the matter unresolvable on the record alone, therefore we ordered defense counsel to submit an affidavit.

After receiving his affidavit, we initially summarily affirmed the findings and sentence. In a footnote to our decision, we noted appellant had asserted his claim of ineffective assistance "without any supporting evidence." The same day we issued our decision, the court received from appellant a motion to attach a subsequent, unsworn affidavit. In his affidavit, appellant asserted he "believe[d]" his defense counsel had not viewed the video of his interview and that defense counsel had strongly recommended accepting the plea agreement, discouraged him from pursuing other avenues, including requesting an administrative discharge instead of trial by court-martial, and failed to properly advise him on matters he could submit to the convening authority for consideration of clemency per Rule for Courts-Martial [R.C.M.] 1106.

We granted the motion to attach. Based on the motion, we elected to sua sponte reconsider our prior decision; this election was later joined by appellant's own motion for reconsideration.[2] Now having considered both affidavits alongside the trial record, we again determine defense counsel's performance was not ineffective, and we again affirm the findings and sentence.[3]

---

[2] In his motion to reconsider, appellant notes he filed a motion to attach his unsworn affidavit on 19 March 2026. While appellant may have moved to attach his affidavit on 19 March, his filing was not *accepted* by the court until the next day, the day our decision was entered and approximately two weeks after we received the affidavit from trial defense counsel. Our grant of the motion to attach and reconsideration of this issue should not be read as endorsing the protracted and dilatory way appellant chose to submit matters for our consideration.

[3] Here, we are not faced with conflicting affidavits. *See Ginn*, 47 M.J. at 244 ("a Court of Criminal Appeals [may not] decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties."). For example, appellant assertion that defense counsel failed to investigate is inherently speculative. *Id.* at 248 ("if the affidavit . . . consists instead of speculative or conclusory observations, the claim may be rejected on that basis."). Moreover, "the record as a whole," including "appellate filings" "compelling demonstrate[s]" the improbability of appellant receiving an administrative discharge given the offenses he faced, discussed *infra*. *Id.*

**LAW AND ANALYSIS**

We review claims of ineffective assistance of counsel de novo. *United States v. Suarez*, 86 M.J. 65, 73 (C.A.A.F. 2025) (citation omitted). "Under *Strickland* [*v. Washington*, 466 U.S. 688 (1984)], an appellant bears the burden of demonstrating that (a) defense counsel's performance was deficient, and (b) this deficient performance was prejudicial." *Id.* (quoting *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021)). In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The primary thrust of appellant's ineffective assistance claims is his defense counsel pushed him toward a plea agreement, rather than an administrative discharge in lieu of court-martial (commonly referred to as a "Chapter 10").[4] Defense counsel asserts he negotiated a favorable disposition with the trial counsel, one to which, based on email communications provided by defense counsel, the trial counsel was perhaps not even authorized to agree, but nonetheless the referral authority agreed to honor, provided the case moved quickly. Defense counsel also provided a screenshot of a text exchange with appellant where not only did he explain the difference between a Chapter 10 administrative discharge and a conviction, but also explained how a Chapter 10 was a unlikely outcome, to which appellant agreed that the plea agreement "Seems like it's the best option." Defense counsel negotiated a plea agreement whereby appellant would not spend a single day in confinement despite a conviction for possessing child pornography; his desire and advice to move quickly to avoid losing that agreement, without submitting a likely futile request for an alternate disposition, is well within the range of acceptable conduct.

Appellant, in his affidavit, repeats his assertion that he would have pursued an administrative discharge in lieu of trial had he known it was a possibility, and he asserts he would not have pled guilty but for counsel's errors. However, appellant affirmed under oath that it was his express desire to be discharged with a bad-conduct discharge, even knowing administrative separation was possible, in order to get the benefit of his agreement. And finally, after affirming under oath that he was satisfied with defense counsel and the advice he had given him, and that appellant understood he had the absolute right to plead not guilty and place upon the government the burden of proving his guilt beyond a reasonable doubt, the military judge asked appellant to pause, consult with his defense counsel again, and once again affirm whether or not he still wanted to plead guilty. Appellant stated he did. In other words, at multiple stages, right up to the moment his plea was accepted,

---

[4] *See generally* Army Reg. 635-200, Active Duty Enlisted Administrative Separations, Chp. 10 (28 Jun. 2021).

appellant was made explicitly aware of the opportunity to abandon the plea agreement, to not plead guilty, and proceed to a contested trial. We find neither deficient performance nor prejudice.

Similarly, appellant's headnote *Grostefon* pleading asserts that defense counsel "encouraged appellant <u>not</u> to submit RCM 1106 post-trial matters" (emphasis in original). But in his affidavit, appellant acknowledges that he and defense counsel discussed an R.C.M. 1106 submission, but counsel advised he did not see any meritorious issues.[5] Defense counsel's affidavit supports this contention, and our review of the record shows that his assessment was reasonable. Again, we do not find deficient performance. Moreover, even if we did, appellant does not explain what he would have submitted had he done so, and so we find he has not established prejudice.

Appellant further asserts that he is not sure if defense counsel reviewed the entire casefile, including the video of his interview with law enforcement, which *may* have formed the basis for a motion to suppress the search of his phone that produced the evidence supporting the conviction. Defense counsel reviewed the evidence, the affidavits supporting the search of appellant's cell phone, and determined that the search of the cell phone was not derivative of the interview, thus determined that there was no merit in a motion to suppress.

The remainder of appellant's assertions are conclusively refuted by his own statements on the record, and we find them inherently incredible.[6] First, he asserts

---

[5] We note the convening authority was unable to provide any form of direct clemency to appellant based on the offense appellant was convicted of and the sentence he received. *See* R.C.M. 1109(b), (c). We acknowledge R.C.M. 1106 remains an important right of every accused and a vehicle by which an accused may submit matters into the record in support of later tertiary relief, even relief that might not present justiciable issues, but appellant does not identify any relief he might have sought had he availed himself of the opportunity.

[6] The standardized, routine inquiries during a guilty plea hearing are not idle words or meaningless ritual. They serve an important purpose—to inoculate the record against exactly the sort of claim we have here. In resolving an ineffective assistance claim in a guilty-plea case, we

> must consider whether the factual allegations supporting
> the claim contradict admissions made in the guilty-plea
> inquiry [and] . . . appellant's avowed satisfaction with his

(continued . . .)

that defense counsel did not "confirm[] that the final number in the stipulation of fact" excluded images and videos that were not confirmed child pornography. Defense counsel, on the other hand asserts that the stipulation correctly excluded these non-criminal images. We have no independent evidence of how many non-criminal images were identified in the original search, thus we have no basis to compare. But more importantly, we do not here need to resolve this possible factual dispute because appellant *thrice* affirmed under oath that the stipulation that he signed and read was true to the best of his knowledge and belief. He provides no reason or explanation for his contrary statement to this court. Second, appellant asserts he "did not fully understand the scope of the consequences of sex offender registry." The military judge confirmed that defense counsel had properly advised appellant of the sex offender registration requirements, and the record includes a form signed by both counsel and appellant that acknowledges: "Because the laws of each state, territory, and local government are different . . . it will be *my* [i.e., appellant's] *responsibility* to determine the registration requirements where I reside, carry on a vocation, or am a student to determine the requirements." (emphasis added).[7]

We take seriously our duty to give "full and fair consideration" to matters raised pursuant to *Grostefon*. Where appellant's allegations could not be adequately

_____

(continued . . .)
> defense counsel. If . . . no reason is proffered for rejecting the earlier contrary assertion by appellant, the allegation can be summarily rejected as inherently incredible . . . .

*Ginn*, 47 M.J. at 244-45.

[7] Failure to provide "accurate advice" concerning federal sex-offender registration requirements can amount to ineffective assistance of counsel. *United States v. Rose*, 71 M.J. 138, 144 (C.A.A.F. 2012), cert. denied 568 U.S. 889 (2012). Correctly advising a client of the overall federal requirement and further advising them that sex offender laws can vary across jurisdictions and are subject to change both in implementation and interpretation, admonishing them to seek information and legal advice within that specific jurisdiction is "accurate advice." *See United States v. Miller*, 63 M.J. 452, 459 (C.A.A.F. 2006) ("Given the plethora of sexual offender registration laws enacted in each state, it is not necessary for trial defense counsel to become knowledgeable about the sex offender registration statutes of every state."). In addition to the form specifically memorializing this advice, in appellant's signed post-trial and appellate rights form, he circled and initialed the sentence "I was aware of the sex offender registration requirement when I decided to plead guilty to an offense that requires sex offender registration."

resolved on the record, we sought and received additional information. With that information, we again determine that appellant's trial defense counsel was not ineffective and reiterate our prior determination that the remaining matters personally submitted pursuant to *Grostefon* merit neither discussion nor relief.

## CONCLUSION

The findings and sentence are AFFIRMED.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

6